IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| | Plaintiff, | CR. NO. S-05-0347 GGH |
| vs. | | |
| PAUL H. CABRERA, | | |
| | Defendant. | ORDER |

Defendant moved for an order under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure dismissing the government's information filed on August 26, 2005. The defendant alleges a material defect in the government's information; specifically, the defendant alleges that the government is attempting to punish conduct under 18 U.S.C. § 930(a) not prohibited in the statute. The defense motion for dismissal is denied.

<u>Background</u>

On August 12, 2005, the defendant entered the lobby of the Robert T. Matsui Federal Courthouse in Sacramento, California. While passing through security, the defendant placed his cane upon the x-ray machine. An x-ray of the cane revealed a long, metal object

1

1  inside.  Upon unscrewing the top of the cane, security guards discovered a 19-inch blade.  The
2  accused was cited under 18 U.S.C. § 930(a) for possession of a dangerous weapon in a Federal
3  facility.
4  *Discussion*
5        The government alleges the accused violated 18 U.S.C.  § 930(a) by possessing a
6  dangerous weapon in a Federal facility.  However, the defendant contends that the Robert T.
7  Matsui Federal Courthouse is excepted from § 930(a) because of its status as a Federal court
8  facility.  Because possession of firearms in a Federal court facility is punished in § 930(e), and
9  that section is silent with regards to possession of dangerous weapons, the defendant asserts that
10 there is no Federal offense prohibiting the defendant's conduct and that the information must be
11 dismissed.
12       The statute at issue in this case punishes the possession and use of firearms and
13 other dangerous weapons in Federal facilities.  Federal facilities are broadly defined in the statute
14 as "a building or part thereof owned or leased by the Federal government, where Federal
15 employees are regularly present for the purpose of performing their official duties."  18 U.S.C. §
16 930(g).  The statute punishes possession of a firearm or other dangerous weapons in "a Federal
17 facility (other than a Federal court facility)" with a maximum punishment of a fine and one year
18 confinement.  18 U.S.C. § 930(a).
19       The statute gives heightened protection against gun violence to the judiciary and
20 other related agencies by increasing the maximum punishment for possession of a firearm in a
21 Federal court facility to a fine and two years confinement.  18 U.S.C. § 930(e).  A Federal court
22 facility is defined with specificity as "the courtroom, judges' chambers, witness rooms, jury
23 deliberation rooms, attorney conference rooms, prisoner holding cells, offices of the court clerks,
24 the United States attorney, and the United States marshal, probation and parole offices, and
25 adjoining corridors of any court of the United States."  18 U.S.C. § 930(g)(3).  No mention is
26 made in § 930(e) of other dangerous weapons.

As a result, the statute in its current form does not appear to criminalize possession of a dangerous weapon in a Federal court facility. However, this absurdity, which would apparently permit the possession of knives, clubs, poisons, or any other item "readily capable of, causing death or serious bodily injury" inside a Federal courthouse, cannot be the intent of the Congress which drafted the statute. 18 U.S.C. § 930(g)(2). Based on the original act into which the parenthetical exception was inserted and the circumstances surrounding the adoption of the amendment which created the Federal court facility exclusion, the statute cannot be interpreted to permit the possession of dangerous weapons in a Federal court facility.

Statutes are interpreted using the plain, ordinary meanings of the words of the statute. This cardinal rule of statutory interpretation is deviated from only when the plain, ordinary meaning of the words creates an absurdity in the application of the law. <u>Dodd v. United States</u>, 125 S.Ct 2478 (2005)(quoting <u>Tyler v. Cain</u>, 533 U.S. 656, 663, 121 S.Ct 2478, 150, L.Ed.2d 632 (2001)("[w]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the courts is not absurd – is to enforce it according to its terms."). Absent some evidence that Congress intended to permit possession of dangerous weapons in a Federal court facility, the court is obliged to apply a common sense reading to the statute. <u>Koons Buick Pontiac GMC, Inc. v. Nigh</u>, 543 U.S. 50, 125 S.Ct. 460 (2004).

Significant evidence causes this court to believe the parenthetical exception eliminating Federal court facilities from protection against dangerous weapons is an absurdity resulting from poor draftsmanship by Congress that does not capture the intent of the statute or its subsequent amendments. The legislation accompanying the amendment inserting Federal court facilities into 18 U.S.C. § 930 strongly indicates that Federal court facilities were to be privileged with greater protection from violence, not lesser. Furthermore, the lack of any objection or debate on a provision which the defendant asserts decriminalizes the possession of dangerous weapons in Federal court facilities is strong evidence that this was not the congressionally intended result of that amendment.

Prior to 1990, 18 U.S.C. § 930 prohibited possession of firearms and other dangerous weapons in Federal facilities without any distinction for Federal court facilities. See Pub. L. No. 100-690, Title VI, § 6215(a). Under the original version of the statute, possession of firearms or other dangerous weapon was punished equally as a class A misdemeanor. There was no distinction made between firearms and other dangerous weapons nor was any distinction made as to the location of the offense.

The parenthetical defining Federal court facilities, excepting them from the protections of § 930(a), and increasing the penalty for possession of a firearm within them was added to the statute as part of the Crime Control Act of 1990. Pub. L. No. 101-647, Title XII, §2205(a). This omnibus crime legislation included a number of significant additions to the law designed to address firearms violence in the country. Sections 2201-2205 of the Crime Control Act of 1990 all contain significant gun control measures which severely limited or prohibited the use, possession, or transfer of firearms in numerous circumstances and in various locations under Federal jurisdiction. Section 2205 of the Crime Control Act of 1990 specifically added the language "(other than a Federal court facility)" to 18 U.S.C. § 930(a) and created 18 U.S.C. § 930(e).

The Congressional Record is silent with regard to § 2205. This court can only speculate that a provision with the intended purpose of permitting the possession of dangerous weapons in Federal court facilities would have been introduced by its sponsor with some explanation and would have been the subject of considerable lively debate. See Church of Scientology of Calif. v. IRS, 484 U.S. 9, 17-18, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987)("All in all, we think this is a case where common sense suggests, by analogy to Sir Arthur Conan Doyle's 'dog that didn't bark,' that an amendment having the effect petitioner ascribes to it would have been differently described by its sponsor, and not nearly as readily accepted by the floor manager of the bill."). The resounding silence concerning this provision speaks clearly to the fact that this amendment was not viewed by Congress as the legalization of the possession of dangerous

4

weapons in Federal court facilities.[1] To find that Congress desired the citizenry to carry swords, spears, and the like into courtrooms, or didn't care about such, is absurd.

Given the context within which the amendment was passed and the lack of any debate on the subject, it is clear that the amendment sought to strengthen the punishment against those possessing a firearm, not eliminate it for those in possession of other dangerous weapons. Any other interpretation of the statute would permit an absurd result that, while applying the text of the statute, refused to apply the logic and meaning behind it. This is the only conclusion this court can reach.

Furthermore, even if the statute could be interpreted to permit the possession of dangerous weapons in a Federal court facility, the location of the offense in this case cannot be considered a Federal court facility under the statute. The Robert T. Matsui Federal Courthouse is a joint-use building possessing judicial, prosecutorial, Congressional, and executive agency offices and facilities, as well as common and service areas. A distinction must be made in joint-use buildings like the Federal courthouse between the judicial facilities in those buildings, and the common areas of the building or those areas affiliated with other agencies. In examining the language of the statute, this is the only result which maintains its integrity. See Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, L.Ed.2d 251 (2001); United States v. Menasche, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (citing Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)).

The Robert T. Matsui Federal Courthouse contains several areas which are distinctly court facilities as defined by the statute; including district and magistrate judge

---

[1] The court notes a potential issue in the Federal Sentencing Guidelines as it concerns 18 U.S.C. § 930. An amendment to the sentencing guidelines effective November 1, 1991, addressed offenses committed in a Federal court facility. Section 2K2.5 of the Federal Sentencing Guidelines increases the base level offense by two levels for "possession of a firearm or dangerous weapon *in a federal court facility* (emphasis added)." Were sentencing to be required in this case, the court is concerned about the application of this section and how any increase in the base offense level could be applied under the facts of this case.

1  courtrooms and offices, offices of the clerk of the court, and the United States Attorney's office.
2  In addition, it contains several floors or suites of nonjudicial offices which cannot be considered
3  in any way to be a Federal court facility; including offices of Congressional representatives, the
4  Environmental Protection Agency, and the United States Secret Service.  Several areas of the
5  building are used by all occupants, including the elevators, the cafeteria, the library, and the
6  lobby, the locus of this alleged misconduct in this case.

7  　　　　　The statute defines Federal facility as a building or part thereof where Federal
8  employees conduct business.  This is an inclusive definition encompassing a wide variety of
9  facilities conducting the spectrum of government business.  From this broadly inclusive
10 definition, the statute specifically excludes certain areas and identifies them as Federal court
11 facilities.

12 　　　　　Unlike the inclusive definition of a Federal facility, the statute specifically limits
13 the definition of a Federal court facility to those areas in which only court business or
14 prosecution occurs.  Common areas shared by those conducting court business with agencies
15 performing other functions are not locations where only court business occurs.  The result of this
16 Congressional specificity must be that a lobby, legislative office, lunchroom, elevator or any
17 other location in a joint-use Federal building not falling within the clear limits of the definition of
18 a Federal court facility cannot be considered a Federal court facility and can only be considered
19 as part of a Federal facility.

20 　　　　　Congress could have put forth a more general definition of Federal court facility
21 rather than the nuanced and specific version contained in the statute.  It must be presumed
22 Congress says what it means and means what it says when it defines terms in a particular way.
23 <u>Conn. Nat'l Bank v. Germain</u>, 503 U.S. 249, 252, 112 S.Ct. 146, 149, 117 L.Ed.2d 391 (1992).
24 In its definition of Federal facility, Congress said what it meant by a building – defining an entire
25 structure where Federal business is done.  Against the background of its definition of Federal
26 facility, Congress then chose to narrowly define a Federal court facility as specific places that

6

may be contained within a Federal facility or any other building.

Defining the entire Robert T. Matsui Federal Courthouse as a Federal court facility would destroy this purposeful distinction drawn by the legislature. The lobby of the building is not part of the clear and precise definition of a Federal court facility. This court cannot declare it to be so simply because the name on the outside of the building may imply otherwise.

It is in the limited areas of a Federal court facility that the heightened protections against firearms violence contained in § 930(e) apply. All other areas not specifically identified as Federal court facilities do not receive this protection and are considered Federal facilities under the statute's more inclusive definition. To identify the entire building as a Federal court facility imposes the protections granted Federal court facilities onto areas not determined by Congress to require such protection, leading to a result which judicially imposes a possible two year maximum punishment for possession of a firearm in the building's various legislative or executive agency offices, and throughout the numerous common areas, in spite of the Congressional determination that these areas warranted lesser protection. In this scenario, the excepted areas would subsume the whole and impermissibly render part of the statute moot.

*Conclusion*

In 18 U.S.C. § 930, Congress sought to protect Federal court facilities by excepting them from the general definition of a Federal facility and enhancing the punishment for those who would threaten their safety with firearms. To contend that Congress intended through this distinction for Federal court facilities to be unprotected against dangerous weapons is an interpretation that does not withstand careful scrutiny. The defendant's motion is denied.

DATED: 12/12/05

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE